(Nos. 4726, 4727 and 4728—Consolidated—)

ALREBT J. WENDLER, ANNA MAE PIZZINI, and HELEN S. FRANCIS, Claimants, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed March 24, 1961.*

*Petition of Claimants for Rehearing denied March 18, 1963.*

BAKER, KAGY AND WAGNER and FRANCIS D. CONNER, Attorneys for Claimants.

WILLIAM L. GUILD, Attorney General; C. ARTHUR NEBEL, Assistant Attorney General, for Respondent.

FEARER, J.

Three separate complaints have been filed by Albert J. Wendler, Anna Mae Pizzini, and Helen S. Francis growing out of an accident, which occurred on July 13, 1955 near a curve approximately 500 feet west of the city limits of Fairmont City, Illinois, on U. S. Route No. 40,

between an automobile being driven by Joseph Bruske, who was traveling in an easterly direction, and an automobile owned and driven by Albert J. Wendler, in which the other two claimants were riding, being driven in a westerly direction toward St. Louis, Missouri.

The record consists of the following:

1. Copies of complaints in each case

2. Departmental Report

3. Transcript of evidence

4. Motion of claimants for an extension of time to and including January 25, 1958 in which to file abstract and brief, together with attached proof of service of a copy on the Attorney General

5. Order of the Chief Justice granting the motion of claimants for an extension of time to and including January 25, 1958 in which to file abstract and brief

6. Motion of claimants for a further extension of time to and including March 25, 1958 in which to file abstract and brief, together with attached proof of service of a copy of the motion on the Attorney General

7. Order of the Chief Justice granting the motion of claimants for a further extension of time to and including March 25, 1958 in which to file abstract and brief

8. Order of the Court dismissing cases for want of prosecution

9. Petition of claimants to expunge order dismissing cases, for leave to reinstate, and for an extension of time in which to file abstract and brief

10. Order of Judge Wham granting the petition of claimants to reinstate cases, and further ordering claimants to file abstract and brief on or before August 30, 1958, or cases to be dismissed for want of prosecution

11. Abstract of evidence

12. Brief of claimants

13. Motion of claimants for leave to amend the ad damnum clauses of complaints

14. Order of the Chief Justice denying the motion of claimants for leave to amend the ad damnum clauses of complaints

15. Statement, brief and argument of respondent

16. Commissioner's Report

The highway upon which the vehicles were traveling was U. S. Highway No. 40 in St. Clair County, which is under the jurisdiction of respondent. It is a four-lane concrete highway having two traffic lanes, each 10 feet in width, for eastbound traffic, and two traffic lanes, each 10 feet in width, for westbound traffic. The traffic lanes were properly marked, including the division of east-

bound and westbound traffic, which consisted of intermittent lines running down the center as a division line, with yellow strips on each side thereof indicating a no passing zone.

The highway in question was constructed in two slabs with an expansion joint in the center.

Claimants are predicating their claims upon the negligence of respondent and its agents in the construction and maintenance of this particular section of road, and are contending that a crack existed in the center of the road, which was filled periodically with bituminous material in the center of the crack, which the evidence shows runs for a distance of some 1,500 feet, with a variance in the width and depth of the crack.

There is a great conflict in the evidence as to the size of the crack, and the care and maintenance of the crack. However, it was testified to that after the alleged accident bituminous material was applied to the center of the road in attempting to correct the condition in the highway.

If the crack or separation in the highway referred to was the proximate cause of the automobile being driven by Joseph Bruske going out of control and running head-on into the automobile being driven by Albert J. Wendler traveling in the opposite direction, in which the other claimants were riding, there is no question in our mind but that, if this crack or separation put into motion the events which subsequently followed, respondent had actual and constructive notice.

Claimants, in traveling in a westerly direction, were traveling on the inside traffic lane, being the passing lane for westbound traffic.

Joseph Bruske, traveling alone in his automobile, had pulled to the inside lane, or the passing lane for east-

bound traffic, as he was going into the curve in question, or just prior to the curve, and at said time and place claimants were coming out of the curve, and, as the Bruske vehicle pulled along side of the truck traveling in the same direction, the truck started to veer to its left toward the Bruske vehicle, at which time Joseph Bruske testified that he was traveling approximately 35 m.p.h. He applied his brakes, the brakes grabbed, and his car crossed the center line, being the dividing or separation in the highway in question, striking the automobile in which claimants were riding, completely demolishing both vehicles, and severely injuring all three claimants.

Joseph Bruske was insured with the Western Casualty and Surety Company for $5,000 and $10,000, $5,000 property damage, so that the insurance company settled with all three claimants under a covenant not to sue in the following amounts: Anna Mae Pizzini—$3,433.33, Helen S. Francis—$3,333.33, and Albert J. Wendler—$3,333.34.

At the time of the accident, the jurisdiction of this Court for personal injuries was the maximum of $7,500.00, which later was amended and increased to $25,000.00, and the ad damnum in the three complaints have been increased by order of this Court. It is the contention of counsel for claimants that the amendment to the Court of Claims Act increasing the ad damnum is retroactive.

We have had occasion to pass on this question before, and we have held that the amendment was not retroactive. *Shockley* vs. *State of Illinois,* 21 C.C.R. 346.

We cannot help but be concerned with the wide variance in the testimony as to what was the proximate cause of the Bruske automobile going out of control,

whether it was the grabbing of the brakes, which caused his car to swerve, or the crack or separation dividing eastbound and westbound traffic.

There is also conflict as to where the accident happened, as the testimony is fairly consistent that, within the 1,500 feet area where the separation was located, it varied in width from practically nothing to as high as 4 to 6 inches.

On direct examination, Joseph Bruske testified before the Commissioner that he was driving a 1953 Hudson on State Route No. 40 on the last curve going into Fairmont City, which curved to the left; that he had an accident, which happened about 8:00 in the morning of July 13, 1955, and that he was traveling at a speed of between 30 and 35 m.p.h. At the time of the collision he was approaching a curve, and was attempting to go around a truck, which was traveling at about the same rate of speed; that, when he was along side of the truck, he decided he had better not pass, because it was bearing over onto him when going into the curve. He testified that he applied his brakes and slowed up, and tried to fall behind the truck. As he started to do this, he hit a separation in the road with his left wheels, which dropped into the separation, and threw his car out of control. It then crossed the center line and collided with the Wendler car head-on. (Abst. 1.)

He estimated the separation at the center of the highway to be about six inches wide and four or five inches deep; that the separation was in the center of the highway, which divided the two eastbound lanes and the two westbound lanes. (Abst. 2.)

On cross-examination, he testified that he had driven on Route No. 40 before that day, and that he was on his way home from East St. Louis at the time of the acci-

dent, having gotten off work at 7:00 A.M., and the accident occurred about 8:00 A.M. He testified that he drove back and forth every day, mostly on this route, and that the weather was clear, the pavement was dry, and visibility was good. He testified he had control of his car just prior to this accident, and that the collision happened when he was behind the truck; that he had decided to pass the truck, and that, "after I pulled up alongside, on the inside of the truck, he started to go into this curve and listed over towards me, and I decided I had better not try to pass him. I applied my brakes, and then my left wheel caught in this crack, and I lost control of the car. When I applied the brakes they responded, but the car seemed to pull over to the left towards the center of the road." (Abst. 3.)

Further quoting from his testimony on page 4 of the abstract: "When I lost control of my car, I was in my own lane. I was in the passing lane at that time. After I lost control of my car when I went in that crack or crevice, I went across the yellow line. I knew the crack was there before this accident happened. I don't know if this crack had been filled before. (Abst. 4.)

"I was arrested about an hour after the accident by a State policeman in the emergency room at the hospital. I don't recall what I told him. I had to pay a fine. The crack, in my best judgment, is four or five inches across and about four or five inches deep, but I have never measured it. (Abst. 5.)

"I was conscious after the accident. The weaving started a little bit after I applied my brakes. The brakes pulled a little to the left. I didn't attempt to turn back to the right. (Abst. 6.)

"The weaving back and forth started after my car dropped its wheel into the crack after I lost control of the

car. I couldn't say how long the wheel was in the crack before the weaving started. All I know is when I applied my brakes, and before I knew it, the car was out of control, to the best of my knowledge." (Abst. 6 and 7.)

This accident was investigated by William H. Thompson, a State police officer, living in Collinsville, Illinois. He testified that, in making his investigation, he was able to locate the point of impact, and could identify where the two cars had come together; that they had hit in the center of the westbound lane, which was the passing lane, and that all of the debris was in that particular lane of traffic. The road was marked with lines to indicate the lane of traffic, that the center line, which divides east and west lanes, is a yellow line, and on each side of this the two lanes are divided by a single line, and that is black and white, alternate.

He further testified that the lines were visible to a driver in a vehicle; that he talked to Joe Bruske at the hospital in the emergency room; that at the time Mr. Bruske did not seem to be seriously injured, and was conscious; that, in interrogating him, Mr. Bruske was asked this question: "How come you got onto his side of the road?" and his answer was: "I don't know. I applied my brakes, and I felt my wheels lock, and I just ran over onto the side of the road."

Mr. Bruske was arrested for being in the wrong lane of traffic. He pleaded guilty, and paid a fine before a police magistrate in Fairmont City.

On cross-examination of the officer, it was brought out that at the time of the interview, immediately after the accident, Mr. Bruske never mentioned a crack or separation in the pavement.

It was also brought out by the officer that the crack in the pavement referred to by the witnesses was farther

down the road than where the accident happened, as the accident occurred right at the westerly edge of the curve as you come out of Fairmont City.

After considering all of the evidence as to the condition of the road, the testimony of the witnesses, the physical facts and the exhibits referred to, it has not been definitely established that the Bruske car was thrown out of control and into the wrong lane of traffic by reason of the crack, as Mr. Bruske's testimony is contradictory. In one instance, he testified it was the crack, which threw his car. However, at the same time, he did admit that the truck forced him closer to the center of the road, and that, in applying his brakes, they grabbed, and that is the last he remembered. In another breath he says that it was the crack, which varied from four to six inches, which caused his car to swerve into the wrong traffic lane and the car in which claimants were riding.

Immediately after the accident he told the officer that it was the grabbing of the brakes, which forced him over into the other traffic lane, while he was attempting to pass the truck and slow down, because the truck was bearing over on him, and at that time he said nothing about running into a crack in the center of the road.

We also have some doubt as to whether or not this accident occurred where the crack was slight, or where there was a crack, or where the crack was from four to six inches wide. There is no way to reconcile this testimony. However, it is convincing, and there is no question but what Joseph Bruske is the only person who knows just what happened, and his first impression and first statement did not relate to the crack in the center of the road, but the cause of his car going out of control and into the other traffic lane, and striking the car in which claimants were riding was the grabbing of the brakes, and we are inclined to believe that this is a true state-

ment. If he had laid great stress upon the crack being a contributive factor, he certainly would have stated this to the policeman. This witness was entirely familiar with the road, as he had been over this particular highway daily for a considerable length of time in going to and from his work.

We are mindful of the fact that there is absolutely no contributory negligence involved in these cases, and that claimants were innocent victims.

We are also cognizant of the fact that two or more defendants can be liable, if it was their negligence which was the proximate cause of the accident in question. However, if the evidence reveals, and if we feel in sitting in this case, as a trier of facts, that the sole proximate cause of the Bruske car going out of control was its defective brakes, which were applied when the passing of the truck was attempted, and was being forced over towards the center of the road, which caused the car to go out of control, and not any defect in the highway, then it would be our duty to find respondent not guilty. This is true even though the center of the highway did have a separation in it. However, if the accident did not happen where the separation occurred, which was great enough to cause a car to go out of control, then, of course, in that event, it would be our duty to find respondent not guilty.

We have held many times that respondent is not an insurer of all persons traveling upon its highways.

Claimants' counsel has cited in his brief an analogy between these cases and one that this Court passed upon in 21 C.C.R. 480, being the case of *Visco, Et Al,* vs. *State of Illinois.* That case is easily distinguishable from the present one in that we found in that case that the driving into the hole was what caused the car to go out of control, and there was no other contributing factor or improper

operation of an automobile, such as we have in the present cases. And, also, in that case there was the question of contributory negligence, which we do not have here.

These cases have to be decided wholly upon the question as to whether or not the division in the center of the highway caused the car to go out of control and into the other traffic lane, or whether it was the grabbing of the brakes, which threw the Bruske car out of control.

Claimants, understandably, do not know what caused the Bruske car to come over into their traffic lane and strike them. This is solely within the knowledge of Mr. Bruske, and, in our minds, his testimony immediately after the accident is more convincing than when these cases were tried. Furthermore, there are too many discrepancies in his testimony to convince us, along with the physical facts and circumstances and evidence to involve respondent as being negligent along with Mr. Bruske, which was the proximate cause of the accident.

We find that the sole proximate cause of the accident was the negligence of Mr. Bruske in the operation of his vehicle in such a manner as to cause it to go out of control, and the operation of his vehicle in a defective condition, as to his brakes.

An award is, therefore, denied.